**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MLB ADVANCED MEDIA, L.P. and MAJOR LEAGUE BASEBALL PROPERTIES, INC.,<br><br>Plaintiffs,<br><br>-against-<br><br>JEMAL DORTCH A/K/A JAMAL DORTCH A/K/A JAMAL WIGGINS, GREGORY SIMMONDS A/K/A RAYMOND MUNZ A/K/A RAYMOND MONZ A/K/A RAYMOND SWANBEE A/K/A RAYMOND PORTER, ALFRED SMITH, AMADOU BALDE, ARTHUR KNIGHT A/K/A ANDRE MACK, DARIEN ANDRE CAINES, and NATHANIEL BOWMAN A/K/A QUINCY,<br><br>Defendants. | CIVIL ACTION NO.<br><br>25 CV 05636 (LAP) (GS) |

## AMENDED COMPLAINT

MLB Advanced Media, L.P. ("MLBAM") and Major League Baseball Properties, Inc. ("MLBP" collectively with MLBAM, "MLB Parties" or "Plaintiffs"), individually and on behalf of the Office of the Commissioner of Baseball ("BOC"), all of the 30 Major League Baseball Clubs (the "MLB Clubs,") including the New York Yankees (the "Yankees") and the New York Mets (the "Mets") baseball clubs, and their respective affiliated and related entities, (collectively, with the MLB Parties, the "MLB Entities"), through their attorneys, complaining of defendants, Jemal Dortch a/k/a Jamal Dortch a/k/a Jamal Wiggins ("Dortch"), Gregory Simmonds a/k/a Raymond Munz a/k/a Raymond Monz a/k/a Raymond Swanbee a/k/a Raymond Porter ("Simmonds"), Alfred Smith ("Smith"), Amadou Balde ("Balde"), Arthur Knight a/k/a Andre Mack ("Knight"), Darien

Andre Caines ("Caines"), and Nathaniel Bowman a/k/a Quincy ("Bowman") (collectively, "Defendants") allege as follows:

## STATEMENT OF THE CASE

1.      Plaintiffs seek monetary and injunctive relief against the Defendants for numerous causes of action, including but not limited to, (i) trademark counterfeiting, in violation of 15 U.S.C. § 1114; (ii) trademark infringement, in violation of 15 U.S.C. § 1114; (iii) false descriptions/false designations of origin, in violation of 15 U.S.C. § 1125(a); (iv) dilution, in violation of 15 U.S.C. § 1125(c); (v) trademark infringement, in violation of New York General Business Law § 360-k; (vi) injury to business reputation and dilution under New York General Business Law § 360-l; (vii) common law trademark infringement; and (viii) common law unfair competition.

2.      Plaintiffs are the owners and/or exclusive licensees of trademarks associated with the MLB Entities throughout the world. In that capacity, Plaintiffs license a wide variety of goods and services bearing the trademarks of the MLB Entities (e.g. the Yankees and the Mets). The Plaintiffs' products bearing the MLB Trademarks (as defined herein and including those marks identifying the Yankees and the Mets) are sought after and popular among not only sports fans, but also the general consumers of fashion and popular culture.

3.      A common problem for iconic brands, such as the MLB Entities, is that there are those who manufacture, offer for sale and/or sell products that are meant to look like authentic merchandise without the authorization of the brand owners and who illegally benefit from the goodwill associated with these brands. These unscrupulous vendors try to sell their wares to unsuspecting consumers in the areas where these consumers would normally purchase official merchandise. In the case of the MLB Entities, vendors of illicit MLB-related merchandise will offer their wares in many locations around the world, but especially in the regions where the MLB

2

Clubs are located (e.g. the New York City area for the Yankees and the Mets), including near the ballparks of the MLB Clubs (e.g. the area around Yankee Stadium and Citi Field). Defendants are some of those vendors, and their sale of counterfeit inferior wares to the public has damaged Plaintiffs.

4.      The Plaintiffs, at great expense, have commenced and led enforcement efforts around the globe, and specifically in the New York City area, including the vicinity around Yankee Stadium and Citi Field, and regularly work with law enforcement in operations against individuals, including the Defendants, and entities selling counterfeit goods bearing Plaintiffs' trademarks. Despite these efforts, Defendants have continued their counterfeiting and infringing activities. Accordingly, Plaintiffs file this action to combat Defendants' infringement of the MLB Trademarks, as well as to protect unknowing consumers from purchasing products they may mistakenly believe to be authorized by the MLB Entities. Defendants' illegal actions have irreparably harmed and continue to irreparably harm the MLB Entities through consumer confusion, dilution, and tarnishment of their valuable trademarks.

## JURISDICTION AND VENUE

5.      These claims arise under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.*, particularly under 15 U.S.C. § 1114(1). This Court has subject matter jurisdiction over the claims in this action which relate to trademark counterfeiting and infringement, dilution and false designations of origin and false descriptions pursuant to the provisions of 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121.

6.      This Court has supplemental jurisdiction over the claims in this Amended Complaint which arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a),

3

since the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

7.     This Court has personal jurisdiction over Defendants because, on information and belief, (a) Defendants manufacture, market, distribute, offer for sale, and sell goods that infringe Plaintiffs' intellectual property within the State of New York; (b) regularly transact and conduct business within the State of New York; and (c) have otherwise made or established contacts with the State of New York sufficient to permit the exercise of personal jurisdiction. This Court further has personal jurisdiction over Defendants because, on information and belief, they are domiciled in the State of New York and in this judicial district.

8.     Venue is proper in this judicial district under 28 U.S.C. § 1391, because the events or omissions giving rise to the claims alleged by Plaintiffs occurred within the City and State of New York and upon information and belief Defendants reside in this judicial district.

**THE PARTIES**

9.     Plaintiff MLBAM is a limited partnership organized under the laws of the State of Delaware with its principal place of business at 1271 Avenue of the Americas, New York, New York 10020. Its general partner is MLB Advanced Media, Inc., a Delaware corporation with its principal place of business at 1271 Avenue of the Americas, New York, New York 10020.

10.    Plaintiff MLBP is a New York corporation with its principal place of business at 1271 Avenue of the Americas, New York, New York 10020.

11.    The MLB Parties are the licensees of and/or act as agents for each of the MLB Entities with respect to a variety of matters, including the licensing and/or protection of intellectual property rights of the applicable MLB Entities throughout the world.

12.     Pursuant to agreements among the MLB Entities, the MLB Parties commercially exploit, protect and enforce rights in the famous and distinctive trademarks, names, logos, symbols, emblems, uniform designs, uniform trade dress colors and other identifying indicia associated with the MLB Entities, including, but not limited to, those that are the subject of valid and subsisting trademark registrations on the Principal Register of the United States Patent and Trademark Office, those that are the subject of valid state registrations, and those that the MLB Entities have adopted and used in commerce throughout the United States (the "MLB Trademarks").

13.     Upon information and belief, Defendant Jemal Dortch a/k/a Jamal Dortch a/k/a Jamal Wiggins is an individual citizen of the State of New York and resides at 630 Coster Street, 2nd Floor, Bronx, New York 10474. Upon information and belief, Dortch has spelled his name several different ways and goes by various aliases, including but not limited to, Jemal Dortch, Jamal Dortch, Jamal Wiggins, Jemal Wiggins, and Jamaal Wiggins.

14.     Upon information and belief, Defendant Gregory Simmonds a/k/a Raymond Munz a/k/a Raymond Monz a/k/a Raymond Swanbee a/k/a Raymond Porter is an individual citizen of the State of New York and resides at 1006 Gerard Avenue, Apartment 9D, Bronx, New York 10452. Upon information and belief, Simmonds has spelled his name several different ways and goes by various aliases, including but not limited to those listed in this Amended Complaint.

15.     Upon information and belief, Defendant Alfred Smith is an individual citizen of the State of New York and resides at 865 Amsterdam Avenue, Apartment 11F, New York, New York 10025.

16.     Upon information and belief, Defendant Amadou Balde is an individual citizen of the State of New York and resides at 2798 Frederick Douglass Boulevard, Apartment 6B, New York, New York 10039.

17.     Upon information and belief, Defendant Arthur Knight a/k/a Andre Mack is an individual citizen of the State of New York and resides at 507 East 161st Street, Apartment 5C, Bronx, New York 10451.

18.     Upon information and belief, Defendant Darien Andre Caines is an individual citizen of the State of New York and resides at 2907 Kingsbridge Terrace, Apartment 4B, Bronx, New York 10463.

19.     Upon information and belief, Defendant Nathaniel Bowman a/k/a Quincy is an individual citizen of the State of New York and resides at 1100 Grand Concourse, Apartment 4E, Bronx, New York 10456.

20.     Plaintiffs are informed and believe and thereupon allege that at all times relevant hereto, Defendants have manufactured, purchased, sold, and/or distributed counterfeit and/or infringing goods bearing the MLB Trademarks.

## PLAINTIFFS' ACTIVITIES

21.     The MLB Clubs are professional baseball clubs known throughout the United States and the world. The MLB Entities own by registration or assignment, federal and state trademark and service mark registrations and trade names bearing the Major League Baseball names, logos, and other designs including, but not limited to, the word and design trademarks of BOC (for example: World Series, Fall Classic, the World Series Trophy, American League of Professional Baseball Clubs, and National League of Professional Baseball Clubs), the word and design trademarks of MLBP (for example: Silhouetted Batter Logo and Major League Baseball),

6

any other word and design trademarks of the MLB Entities, including without limitation the word and design trademarks of the MLB Clubs. The MLB Trademarks are used on and/or in connection with a variety of goods including, but not limited to, adult and children's apparel, baseball caps, headwear, sporting goods, sports accessories, novelties, publications, trading cards, household merchandise, souvenirs and related products (the aforementioned diverse goods bearing and/or identified by the MLB Trademarks are hereinafter referred to as the "MLB Products").

22.     Plaintiffs, by authorization of the other MLB Entities, are responsible for protecting the MLB Trademarks from infringement, dilution, disparagement, misappropriation, counterfeiting, and unfair competition.

23.     Plaintiffs are the sole and exclusive licensors in the United States of the MLB Products.

24.     Plaintiffs and each of the other MLB Entities adopted the MLB Trademarks and have used and licensed the use of the MLB Trademarks on MLB Products for many years, and in some instances decades.

25.     Plaintiffs and the other MLB Entities have registered with the United States Patent and Trademark Office and State trademark offices the trademarks attached hereto as Exhibit A (the "MLB Registrations").

26.     The MLB Registrations are in full force and effect and many of them have become incontestable pursuant to 15 U.S.C. § 1065. The MLB Trademarks and goodwill of the businesses of the MLB Parties and the respective MLB Entities in connection with which the trademarks are used have never been abandoned. Plaintiffs preserve and maintain their rights and the rights of the respective MLB Entities with respect to the MLB Trademarks and in the MLB Registrations.

27.     Plaintiffs, themselves and through licensees, as a business policy, have established and maintain high standards of quality for products bearing one or more of the MLB Trademarks. The MLB Parties maintain stringent quality control over licensees of the MLB Trademarks with respect to the style and quality of licensed goods sold or offered for sale bearing the MLB Trademarks in order to preserve and protect the valuable rights therein.

28.     In supervising licensees, the MLB Parties provide licensees and licensed product manufacturers with official specifications setting forth extensive details with respect to use of trademark registration symbols, typeface and typography, color renderings, official uniform scripts, graphic design, materials, workmanship, and quality. All licensed products and designs are thereafter reviewed under strict quality control procedures by the MLB Parties, their licensing agents, where appropriate, and/or the other MLB Entities. Quality control procedures include submission and review prior to final approval of sketches and concepts, finished artwork, pre-production samples, and finished products, and review of related sales, marketing and advertising materials. The foregoing quality control procedures assure that all such goods bearing or associated with the MLB Trademarks will be identified by purchasers as high-quality goods emanating from, licensed by, sponsored, or authorized by Major League Baseball. Plaintiffs and the MLB Entities expend significant time and money in their quality control efforts to ensure that the licensed products being sold to their consumers are of the highest quality.

29.     All licensees of the MLB Parties are subject to further requirements and specifications concerning use of hangtags, labels and/or holograms that are attached to the MLB Products or their packaging, with the purpose of identifying to the purchasers of MLB Products that such goods are authentic.

30. The MLB Parties maintain strict guidelines for their licensees as to the online and offline distribution channels for MLB Products.

31. The MLB Parties and their licensees have widely distributed throughout the United States and worldwide the aforementioned MLB Products. There is a substantial public demand for such goods, and because of said public demand, the right to manufacture, sell, and/or distribute such goods is a valuable commercial property right.

32. The authorized MLB Products bearing the MLB Trademarks have been advertised by the MLB Parties and their licensees to the purchasing public and to the trades throughout the United States and internationally on an extensive and frequent basis by a variety of media, including newspaper, magazines, television, radio, the Internet, trade publications, and baseball game programs.

33. The MLB Products, by reason of their style, design excellence, and quality of workmanship, have come to be known to the purchasing public throughout the United States and worldwide as representing products of the highest quality. Millions of dollars are spent each year by the MLB Parties, the other MLB Entities, and their licensees and/or sponsors on advertising and promoting MLB Products, and their integrity, quality, and superior workmanship.

34. By virtue of the wide renown of the MLB Trademarks and wide geographic distribution and extensive sale of various goods bearing those trademarks, the MLB Trademarks have developed secondary meaning and significance in the minds of the purchasing public and are famous and distinctive. The MLB Products are immediately identified by the purchasing public as being associated with the applicable MLB Entity(ies). The MLB Products have been and are now recognized by the public and the trade as originating from the MLB Parties, on their own and on behalf of the other MLB Entities.

9

35.     For decades, Plaintiffs and each of the other MLB Entities have developed their reputations and distinctive images in both domestic and international markets.

36.     Plaintiffs and each of the other MLB Entities advertise, market, and sell their diverse goods through numerous distribution channels including but not limited to exclusive retail stores, department stores, and online through the MLB merchandise website, mlbshop.com.

37.     Plaintiffs own or manage in excess of 1,000 Major League Baseball-related trademark registrations with the United States Patent & Trademark Office, including but not limited to those listed on Exhibit A attached hereto.

38.     Plaintiffs and each of the other MLB Entities have gone and continue to go to great lengths, including spending significant time and money on enforcement efforts, to protect their names and enforce the MLB Trademarks.

### DEFENDANTS' COUNTERFEITING & INFRINGING ACTIVITIES

39.     In blatant disregard of Plaintiffs' well-established rights in the MLB Trademarks, despite repeated warnings, the public filing and service of process in this case against Dortch, and without authorization or approval from Plaintiffs, Defendants have counterfeited and infringed, continue to counterfeit and infringe, and threaten to further counterfeit and infringe the MLB Trademarks by distributing and selling unauthorized merchandise, including but not limited to, apparel, baseball caps, and headwear, bearing one or more identical, substantially indistinguishable, or confusingly similar copies of the MLB Trademarks ("Infringing Goods").

40.     Defendants each have a history of repeatedly violating Plaintiffs' rights by manufacturing, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods in the area near Yankee Stadium and/or Citi Field.

**A. DORTCH**

41.    Dortch has been engaging in his infringing and counterfeiting activities since at least 2022, and despite having been personally served with the Complaint in this proceeding on July 10, 2025, was seen as recently as October 7, 2025, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods.

42.    Upon information and belief, Dortch supplies infringing and/or counterfeit caps to some of the other Defendants, who then advertise, market, distribute, offer for sale, and/or sell the Infringing Goods.

43.    On September 23, 2022, Dortch was arrested in front of 51 East 161st Street, Bronx, New York 10451, for trademark counterfeiting in the 3rd Degree in connection with his distributing, offering for sale, and/or selling Infringing Goods.

44.    On April 1, 2023, Dortch was arrested in front of Yankee Stadium at 1 East 161st Street, Bronx, New York 10451, for trademark counterfeiting in the 3rd Degree in connection with his distributing, offering for sale, and/or selling Infringing Goods.

45.    On July 7, 2024, Dortch was observed in front of 51 East 161st Street, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, in particular caps bearing the MLB Trademarks related to the Yankees. As part of Plaintiffs' enforcement efforts, Plaintiffs served Dortch with a cease and desist letter and as a result, Dortch agreed to voluntarily surrender the Infringing Goods, consisting of 56 counterfeit Yankees caps.

46.    On July 24, 2024, Dortch was observed in front of 51 East 161st Street, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs

11

served Dortch with a cease and desist letter and as a result, Dortch agreed to voluntarily surrender

the Infringing Goods, consisting of 25 counterfeit Yankees caps and hats.



47.    On August 24, 2024, Dortch was observed in front of 51 East 161st Street, Bronx,

New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing

Goods, as reflected in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs

served Dortch with a cease and desist letter and as a result, Dortch agreed to voluntarily surrender

the Infringing Goods, consisting of 18 counterfeit Yankees caps and hats.



12

48.     On August 25, 2024, Dortch was observed in front of 51 East 161st Street, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Dortch with a cease and desist letter and as a result, Dortch agreed to voluntarily surrender the Infringing Goods, consisting of 16 counterfeit Yankees caps and hats and 2 counterfeit Yankees t-shirts. Dortch subsequently made another voluntary surrender of 4 counterfeit Yankees t-shirts.





49.     Later that same day, August 25, 2024, Dortch was observed again in front of 51 East 161st Street, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Dortch with a cease and desist letter and as a result, Dortch agreed to voluntarily surrender the Infringing Goods, this time consisting of 9 counterfeit Yankees caps and hats and 4 counterfeit Yankees t-shirts.



50.    On September 15, 2024, Dortch was observed in front of 51 East 161st Street, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Dortch with a cease and desist letter and as a result, Dortch agreed to voluntarily surrender the Infringing Goods, consisting of 8 counterfeit Yankees caps and hats.





51.    On September 24, 2024, Dortch was observed in front of 51 East 161st Street, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photographs below. As part of Plaintiffs' enforcement efforts,

Plaintiffs served Dortch with a cease and desist letter and as a result, Dortch agreed to voluntarily surrender the Infringing Goods, consisting of 3 counterfeit Yankees caps.



52.    On October 14, 2024, Dortch was observed in front of 51 East 161st Street, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Dortch with a cease and desist letter and as a result, Dortch agreed to voluntarily surrender the Infringing Goods, consisting of 4 counterfeit Yankees caps.



53.    On October 30, 2024 Dortch was observed in front of 51 East 161st Street, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs

served Dortch with a cease and desist letter and as a result, Dortch agreed to voluntarily surrender the Infringing Goods, consisting of 5 counterfeit Yankees caps.



54.    Later that same day, October 30, 2024, Dortch was again observed in front of 51 East 161st Street, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Dortch with a cease and desist letter and as a result, Dortch agreed to voluntarily surrender the Infringing Goods, this time consisting of 6 counterfeit Yankees caps.



55.    On March 29, 2025, Dortch was observed in front of 51 East 161st Street, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing

Goods. Plaintiffs' investigator made an undercover purchase from Dortch of a counterfeit Yankees t-shirt and cap, as depicted in the photographs below.



56.     On April 15, 2025, Dortch was observed in front of 51 East 161st Street, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods. Plaintiffs' investigator made an undercover purchase from Dortch of a counterfeit Yankees hat and cap, as depicted in the photographs below.



57.     On May 16, 2025, Dortch was observed in front of 51 East 161st Street, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing

18

Goods. Plaintiffs' investigator made an undercover purchase from Dortch of a counterfeit Yankees cap, as depicted in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Dortch with a cease and desist letter and as a result, Dortch agreed to voluntarily surrender the Infringing Goods, consisting of 16 counterfeit Yankees caps.



58.    Later that same day, May 16, 2025, Dortch was again observed in front of 51 East 161st Street, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods. As part of Plaintiffs' enforcement efforts, Plaintiffs served Dortch with a cease and desist letter and as a result, Dortch agreed to voluntarily surrender the Infringing Goods, this time consisting of 24 counterfeit Yankees caps.

59.    On May 17, 2025, Dortch was observed in front of 51 East 161st Street, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photograph below.



60.    On May 18, 2025, Dortch was observed in front of 51 East 161st Street, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photograph below.



61.    On June 6, 2025, Dortch was observed in front of 51 East 161st Street, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs

served Dortch with a cease and desist letter and as a result, Dortch agreed to voluntarily surrender the Infringing Goods, consisting of 4 counterfeit Yankees caps.



62.     On July 10, 2025, Dortch was served with the Complaint in this proceeding.

63.     On August 9, 2025, Dortch was observed in front of 51 East 161st Street, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Dortch with a cease and desist letter and as a result, Dortch agreed to voluntarily surrender the Infringing Goods, consisting of 4 counterfeit Yankees t-shirts.





64.    On August 10, 2025, Dortch was observed in front of 51 East 161st Street, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Dortch with a cease and desist letter and as a result, Dortch agreed to voluntarily surrender the Infringing Goods, consisting of 5 counterfeit Yankees caps.





65.    On August 22, 2025, Dortch was observed in front of 51 East 161st Street, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Dortch with a cease and desist letter and as a result, Dortch agreed to voluntarily surrender the Infringing Goods, consisting of 9 counterfeit Yankees caps and 4 counterfeit Yankees t-shirts.



66.     On August 27, 2025, Dortch was observed in front of 51 East 161st Street, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Dortch with a cease and desist letter and as a result, Dortch agreed to voluntarily surrender the Infringing Goods, consisting of 39 counterfeit Yankees caps.



67.     On September 9, 2025, Dortch was observed in front of 51 East 161st Street, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Dortch with a cease and desist letter and as a result, Dortch agreed to voluntarily surrender the Infringing Goods, consisting of 41 counterfeit Yankees caps and 13 counterfeit Yankees t-shirts.





68.     On September 10, 2025, Dortch was observed in front of 51 East 161st Street, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photographs below. Plaintiffs' investigator made an undercover purchase from Dortch of a counterfeit Yankees cap, as depicted in the photographs below.



69.    On September 30, 2025, Dortch was observed in front of 51 East 161st Street, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photograph below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Dortch with a cease and desist letter and as a result, Dortch agreed to voluntarily surrender the Infringing Goods, consisting of 4 counterfeit Yankees hats.



70.    On October 1, 2025, Dortch was observed in front of 51 East 161st Street, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs

served Dortch with a cease and desist letter and as a result, Dortch agreed to voluntarily surrender the Infringing Goods, consisting of 3 counterfeit Yankees caps.





71.     On October 7, 2025, Dortch was observed on three separate occasions near 161st Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photograph below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Dortch with cease and desist letters and as a result, Dortch agreed to voluntarily surrender the Infringing Goods, consisting of a total of 8 counterfeit Yankees hats.



**B. SIMMONDS**

72.    Simmonds has been engaging in his infringing and counterfeiting activities since at least March 29, 2025, and was seen as recently as September 24, 2025, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods.

73.    Upon information and belief, Simmonds manufactures some of the infringing and/or counterfeit t-shirts that he advertises, markets, distributes, offers for sale, and/or sells.

74.    Upon information and belief, Simmonds supplies the infringing and/or counterfeit t-shirts he manufactures to some of the other Defendants, who then advertise, market, distribute, offer for sale, and/or sell the Infringing Goods.

75.    On March 29, 2025, Simmonds was observed near East 161st Street between Gerard and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photograph below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Simmonds with a cease and desist letter and as a result, Simmonds agreed to voluntarily surrender the Infringing Goods, consisting of 3 counterfeit Yankees caps.



76.     On April 15, 2025, Simmonds was observed near East 161st Street between Gerard and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photograph below.



77.     On May 18, 2025, Simmonds was observed near East 161st Street between Gerard and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Simmonds with a cease and desist letter and as a result, Simmonds agreed to voluntarily surrender the Infringing Goods, consisting of 15 counterfeit Yankees caps and 2 counterfeit Mets caps.





78.     On August 13, 2025, Simmonds was observed near East 161st Street between Gerard and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photograph below.



79.     On August 22, 2025, Simmonds was observed near East 161st Street between Gerard and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photograph below. Plaintiffs' investigator made an undercover purchase from Simmonds of an infringing Yankees t-shirt, as depicted in the photograph below.



80.     On August 27, 2025, Simmonds was observed near East 161st Street between Gerard and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Simmonds with a cease and desist letter and as a result, Simmonds agreed to voluntarily surrender the Infringing Goods, consisting of 47 counterfeit Yankees caps.



81.    On September 9, 2025, Simmonds was observed near East 161st Street between Gerard and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photograph below.



82.    On September 10, 2025, Simmonds was observed near East 161st Street between Gerard and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photograph below.



83.    On September 24, 2025, Simmonds was observed near 79 East 161st Street, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photograph below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Simmonds with a cease and desist letter and as a result, Simmonds agreed to voluntarily surrender the Infringing Goods, consisting of 20 counterfeit Yankees caps.



## C. SMITH

84.    Smith has been engaging in his infringing and counterfeiting activities since at least March 30, 2025, and was seen as recently as October 8, 2025, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods.

85.    On March 30, 2025, Smith was observed on River Avenue between 163rd and 164th Street, Bronx, New York 10452, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Smith with a cease and desist letter and as a result, Smith agreed to voluntarily surrender the Infringing Goods, consisting of 21 counterfeit Yankees caps.





86.    On July 11, 2025, Smith was observed near the corner of East 161st Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photographs below. As part of Plaintiffs' enforcement

efforts, Plaintiffs served Smith with a cease and desist letter and as a result, Smith agreed to voluntarily surrender the Infringing Goods, consisting of 44 counterfeit Yankees caps.





87.    On August 21, 2025, Smith was observed near the corner of East 161st Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photograph below.

36



88.    On September 10, 2025, Smith was observed near the corner of East 161st Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Smith with a cease and desist letter and as a result, Smith agreed to voluntarily surrender the Infringing Goods, consisting of 21 counterfeit Yankees caps.





89.     On September 30, 2025, Smith was observed near the corner of East 161st Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photograph below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Smith with a cease and desist letter and as a result, Smith agreed to voluntarily surrender the Infringing Goods, consisting of 5 counterfeit Yankees caps.



90.     On October 1, 2025, Smith was observed on two separate occasions near the corner of East 161st Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Smith with cease and desist

letters and as a result, Smith agreed to voluntarily surrender the Infringing Goods, consisting of a total of 5 counterfeit Yankees caps.





91.    On October 2, 2025, Smith was observed on two separate occasions near the corner of East 161st Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Smith with cease and desist letters and as a result, Smith agreed to voluntarily surrender the Infringing Goods, consisting of a total of 2 counterfeit Yankees caps.



92.     On October 8, 2025, Smith was observed near the corner of East 161st Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photograph below.



### D. BALDE

93.     Balde has been engaging in his infringing and counterfeiting activities since at least July 7, 2024, and was seen as recently as October 8, 2025, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods.

94.     On August 13, 2025, Balde was observed in front of 51 East 161st Street, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Balde with a cease and desist letter and as a result, Balde agreed to voluntarily surrender the Infringing Goods, consisting of 269 counterfeit Yankees caps and hats and 7 counterfeit Yankees jerseys.





95.     On October 8, 2025, Balde was observed in front of 51 East 161st Street, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods. Plaintiffs' investigator made an undercover purchase from Balde of an infringing Yankees hat and cap, as depicted in the photograph below.



### E.  KNIGHT

96.     Knight has been engaging in his infringing and counterfeiting activities since at least September 13, 2024, and was seen as recently as October 1, 2025, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods.

97.     On March 29, 2025, Knight was observed near East 157th Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photograph below. As part of Plaintiffs' enforcement efforts,

Plaintiffs served Knight with a cease and desist letter and as a result, Knight agreed to voluntarily surrender the Infringing Goods, consisting of 20 counterfeit Yankees caps.



98.     On April 4, 2025, Knight was observed outside of Citi Field in Parking Lot D, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods. Plaintiffs' investigator made an undercover purchase from Knight of a counterfeit Mets cap, as depicted in the photographs below.



99.    On April 15, 2025, Knight was observed near East 157th Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods. Plaintiffs' investigator made an undercover purchase from Knight of a counterfeit Yankees cap, as depicted in the photographs below.



100.    On May 18, 2025, Knight was observed near East 157th Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photograph below.



101.    On July 11, 2025, Knight was observed near East 157th Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photograph below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Knight with a cease and desist letter and as a result, Knight agreed to voluntarily surrender the Infringing Goods, consisting of 36 counterfeit Yankees caps.



102.    On August 9, 2025, Knight was observed near East 161st Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photograph below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Knight with a cease and desist letter and as a result, Knight agreed to voluntarily surrender the Infringing Goods, consisting of 12 counterfeit Yankees caps.



103.    On August 27, 2025, Knight was observed outside of Citi Field, between Parking Lots F & B, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photograph below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Knight with a cease and desist letter and Knight fled the scene, abandoning 6 counterfeit Mets caps. Plaintiffs then took possession of the 6 counterfeit Mets caps.



104.    On September 13, 2025, Knight was observed near East 157th Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Knight with a cease and desist letter and as a result, Knight agreed to

voluntarily surrender the Infringing Goods, consisting of 14 counterfeit Yankees hats and 46 counterfeit Yankees and Red Sox caps.







105.    On September 15, 2025, Knight was observed near East 157th Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photographs below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Knight with a cease and desist letter and as a result, Knight agreed to voluntarily surrender the Infringing Goods, consisting of 47 counterfeit Yankees and Red Sox caps and hats.





106. On September 24, 2025, Knight was observed on Gerard Avenue, between East 157th and 153rd Street, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods.

107. On October 1, 2025, Knight was observed outside of Yankees Stadium, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods.

### F. CAINES

108. Caines has been engaging in his infringing and counterfeiting activities since at least September 13, 2024, and was seen as recently as September 10, 2025, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods.

109. On March 29, 2025, Caines was observed outside Yankee Stadium near Gate 2, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods. The New York Police Department issued Caines a Summons in connection with his sale of the Infringing Goods.

110. On April 5, 2025, Caines was observed outside of Citi Field near the stairs to the Mets-Willets Point Subway Station, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photograph below. As part of Plaintiffs' enforcement

49

efforts, Plaintiffs served Caines with a cease and desist letter and as a result, Caines agreed to voluntarily surrender the Infringing Goods, consisting of 4 counterfeit Mets caps.



111.    On May 17, 2025, Caines was observed outside Yankee Stadium near Gate 2, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photograph below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Caines with a cease and desist letter and as a result, Caines agreed to voluntarily surrender the Infringing Goods, consisting of 10 counterfeit Yankees and Mets caps.



112.    On May 18, 2025, Caines was observed outside Yankee Stadium near Gate 4, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted

in the photograph below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Caines with a cease and desist letter and as a result, Caines agreed to voluntarily surrender the Infringing Goods, consisting of 9 counterfeit Yankees and Mets caps.



113.    On September 10, 2025, Caines was observed in front of 51 East 161st Street, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photograph below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Caines with a cease and desist letter and as a result, Caines agreed to voluntarily surrender the Infringing Goods, consisting of 24 counterfeit Yankees caps. The New York Police Department also served Caines with a Civil Summons for unlicensed vending.



**G. BOWMAN**

114.    Bowman has been engaging in his infringing and counterfeiting activities since at least March 27, 2025, and was seen as recently as October 1, 2025, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods.

115.    On March 27, 2025, Bowman was observed outside Yankee Stadium between Gates 4 and 6, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photograph below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Bowman with a cease and desist letter and as a result, Bowman agreed to voluntarily surrender the Infringing Goods, consisting of 16 counterfeit Yankees caps and 3 counterfeit Yankees t-shirts.



116.    On July 13, 2025, Bowman was observed near East 161st Street and River Avenue, Bronx, New York 10451, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photographs below. As part of Plaintiffs' enforcement efforts,

Plaintiffs served Bowman with a cease and desist letter and as a result, Bowman agreed to voluntarily surrender the Infringing Goods, consisting of 5 counterfeit Yankees and Mets t-shirts.





117.    On September 18, 2025, Bowman was observed outside of Citi Field near the stairs to the Mets-Willets Point Subway Station, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photographs below. As part of Plaintiffs'

enforcement efforts, Plaintiffs served Bowman with a cease and desist letter and as a result, Bowman agreed to voluntarily surrender the Infringing Goods, consisting of 15 counterfeit Mets caps.





118.    On October 1, 2025, Bowman was observed outside Yankee Stadium between Gates 4 and 6, advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods as depicted in the photograph below. As part of Plaintiffs' enforcement efforts, Plaintiffs served Bowman with a cease and desist letter and as a result, Bowman agreed to voluntarily surrender the Infringing Goods, consisting of 9 counterfeit Yankees caps.



## H. DEFENDANTS' ACTIVITIES

119.    Long after Plaintiffs and each of the other MLB Entities' use and registration of the MLB Trademarks, Defendants, on information and belief, commenced the manufacture, distribution, and/or sale of the Infringing Goods bearing counterfeits and infringements of the MLB Trademarks as those trademarks appear on Plaintiffs' products and as shown in Exhibit A to this Amended Complaint.

120.    The activities of Defendants complained of herein constitute willful and intentional counterfeiting and infringement of the MLB Trademarks, are in total disregard of Plaintiffs' rights, and were commenced and have continued in spite of Defendants' knowledge that the use of any of the MLB Trademarks, or copies or colorable imitations thereof, was and is in direct contravention of Plaintiffs' rights.

121.    Use by Defendants of identical, substantially indistinguishable and/or confusingly similar copies of the MLB Trademarks has been without Plaintiffs' consent, is likely to cause confusion and mistake in the minds of the purchasing public, and, in particular, tends to and does

55

falsely create the impression that the Infringing Goods sold by Defendants are authorized, sponsored, or approved by Plaintiffs when, in fact, they are not.

122. The likelihood of confusion, mistake, and deception engendered by Defendants' misappropriation of the MLB Trademarks is causing irreparable harm to the goodwill symbolized by the MLB Marks and the reputation for quality that they embody.

123. Upon information and belief, by virtue of his unlawful conduct, Defendants have made profits and gains to which they are not entitled in law or equity.

### FIRST CAUSE OF ACTION
### TRADEMARK COUNTERFEITING
### 15 U.S.C § 1114

124. Plaintiffs repeat and reallege the allegations of the previous paragraphs as though fully set forth herein.

125. Defendants have used spurious designations that are identical with, or substantially indistinguishable from, the MLB Trademarks on goods covered by registrations for the MLB Trademarks.

126. Defendants are intentionally and willfully using these spurious designations knowing they are counterfeit in connection with the manufacturing advertising, sale, offering for sale and distribution of counterfeit goods for their own personal financial gain and such intentional and willful conduct by the Defendants make this an exceptional case.

127. Defendants' use of the MLB Trademarks to manufacture, advertise, offer for sale, sell and distribute Defendants' counterfeit products was and is without the consent of Plaintiffs.

128. Defendants' unauthorized use of the MLB Trademarks on and in connection with the manufacturing, advertising and sale of counterfeit goods constitutes Defendants' use of the MLB Trademarks in commerce.

129. Defendants' unauthorized use of the MLB Trademarks as set forth above is likely to:

(a) cause confusion, mistake and deception;

(b) cause the public to believe that Defendants' counterfeit products are the same as Plaintiffs' products and/or that Defendants are authorized, sponsored or approved by Plaintiffs or that Defendants are affiliated, connected or associated with or in some way related to Plaintiffs or the other MLB Entities; and

(c) result in Defendants unfairly benefiting from the MLB Entities' advertising and promotion and profiting from the reputation of the MLB Entities and the MLB Trademarks all to the substantial and irreparable injury of the public, Plaintiffs and the MLB Trademarks and the substantial goodwill represented thereby.

130. Defendants' acts as aforesaid constitute trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

131. Defendants' wrongful acts of counterfeiting will continue unless enjoined by this Court.

132. Plaintiffs have no adequate remedy at law and have suffered and continue to suffer irreparable harm and damage as a result of Defendants' acts as aforesaid in an amount not thus far determined.

133. Upon information and belief, Defendants have obtained gains, profits and advantages as a result of their wrongful acts in an amount thus far not determined.

**SECOND CAUSE OF ACTION**
**TRADEMARK INFRINGEMENT**
**15 U.S.C. § 1114**

134. Plaintiffs repeat and reallege the allegations of the previous paragraphs as though fully set forth herein.

135. The MLB Trademarks are fanciful and arbitrary and are associated in the mind of the public with Plaintiffs and the other MLB Entities.

57

136. Based on Plaintiffs' extensive advertising, sales and the wide popularity of Plaintiffs' products, the MLB Trademarks have acquired secondary meaning so that any product or advertisement bearing such trademarks is immediately associated by purchasers and the public as being a product and affiliate of Plaintiffs.

137. Defendants use the MLB Trademarks in connection with Defendants' manufacturing, sale, distribution and advertising of their counterfeit and infringing goods.

138. Defendants' activities as aforesaid constitute Defendants' use in commerce of the MLB Trademarks.

139. Defendants have used the MLB Trademarks without Plaintiffs' consent or authorization. Defendants' use, including the sale and distribution of infringing products in interstate commerce, is likely to cause confusion and mistake in the minds of the public, leading the public to believe that Defendants' products emanate or originate from Plaintiffs or the other MLB Entities, or that Plaintiffs have approved, sponsored or otherwise associated themselves with Defendants, all of which is untrue.

140. Defendants have intentionally used the MLB Trademarks in connection with the manufacturing, offering for sale, sale, and distribution of counterfeit goods, knowing they are the exclusive property of Plaintiffs or the other MLB Entities.

141. Defendants' conduct is intended to exploit the goodwill and reputation associated with the MLB Trademarks.

142. Plaintiffs have no control over the quality of Defendants' counterfeit merchandise. Because of the very real likelihood of confusion as to the source of Defendants' products, Plaintiffs' reputation and the valuable goodwill in the MLB Trademarks are at the mercy of Defendants' unscrupulous tactics.

58

143.    Defendants' activities as aforesaid create the false and misleading impression that Defendants are sanctioned, assigned or authorized by Plaintiffs to use the MLB Trademarks to manufacture, advertise, distribute, appraise, offer for sale, or sell counterfeit products bearing the MLB Trademarks when Defendants are not so authorized.

144.    Defendants engage in the aforementioned activity with the intent to confuse and deceive consumers into believing that Defendants and the goods they sells are in some way sponsored by, affiliated or associated with Plaintiffs or the other MLB Entities when the Defendants are not.

145.    Defendants' unauthorized use of the MLB Trademarks as set forth above has resulted in Defendants unfairly benefiting from Plaintiffs' advertising and promotion and profiting from Plaintiffs' reputation and the MLB Trademarks, to the substantial and irreparable injury of the public, Plaintiffs and the MLB Trademarks and the substantial goodwill represented thereby.

146.    Defendants' aforesaid acts constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

147.    Defendants' acts have caused, and will continue to cause, great and irreparable injury to Plaintiffs, and unless such acts are restrained by this Court, they will continue, thereby causing Plaintiffs to continue to suffer great and irreparable injury. Plaintiffs have no adequate remedy at law.

148.    Plaintiffs are informed and believe and thereon allege that Defendants' infringement is both intentional and egregious.

149.    Plaintiffs have no adequate remedy at law and are suffering irreparable harm and damage as a result of the aforesaid acts of Defendants in an amount thus far not determined.

150.    Upon information and belief, Defendants have obtained gains, profits and advantages as a result of their wrongful acts in an amount thus far not determined.

**THIRD CAUSE OF ACTION**
**FALSE DESIGNATIONS OF ORIGIN,**
**FALSE DESCRIPTIONS AND REPRESENTATIONS**
**15 U.S.C. § 1125(a)**

151.    Plaintiffs repeat and reallege the allegations of the previous paragraphs as though fully set forth herein.

152.    Defendants have, in connection with their goods, used in commerce, and continue to use in commerce, the MLB Trademarks.

153.    Defendants have affixed, applied and used in connection with their sale of goods, false designations of origin and false and misleading descriptions and representations, including the MLB Trademarks, which tend falsely to describe the origin, sponsorship, association or approval by the Plaintiffs of the goods sold by the Defendants.

154.    Defendants use one or more of the MLB Trademarks with full knowledge of the falsity of such designations of origin, descriptions and representations, all to the detriment of Plaintiffs.

155.    Defendants' use of the MLB Trademarks on the counterfeit goods constitutes false descriptions and representations tending to falsely describe or represent Defendants and Defendants' products as being authorized, sponsored, affiliated or associated with Plaintiffs or the other MLB Entities.

156.    Defendants use one or more of the MLB Trademarks on counterfeit goods with the express intent to cause confusion and mistake, to deceive and mislead the purchasing public, to trade upon the high-quality reputation of Plaintiffs and to improperly appropriate to themselves the valuable trademark rights of Plaintiffs or the other MLB Entities.

60

157.    Defendants' aforesaid acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to falsely or misleadingly describe and/or represent Defendants' products as those of Plaintiffs or the other MLB Entities in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

158.    Defendants' wrongful acts will continue unless enjoined by this Court.

159.    Plaintiffs have no adequate remedy at law and are suffering irreparable harm and damage as a result of the aforesaid acts of Defendants in an amount thus far not determined.

160.    Upon information and belief, Defendants have obtained gains, profits and advantages as a result of their wrongful acts in an amount thus far not determined.

## FOURTH CAUSE OF ACTION
## FEDERAL TRADEMARK DILUTION
## 15 U.S.C. § 1125(c)

161.    Plaintiffs repeat and reallege the allegations of the previous paragraphs as though fully set forth herein.

162.    Plaintiffs are the exclusive licensors of the MLB Trademarks listed on Exhibit A attached hereto.

163.    Defendants' use of MLB Trademarks on the counterfeit goods they sell constitutes Defendants' commercial use in commerce of the MLB Trademarks.

164.    The MLB Trademarks have been used for years, and in some instances decades, and are so globally recognized and associated with Plaintiffs or the other MLB Entities that they are entitled to be recognized as famous and distinctive under 15 U.S.C. § 1125(c).

165.    The MLB Trademarks have come to have a secondary meaning indicative of origin, relationship, sponsorship and/or association with the Plaintiffs or the other MLB Entities and their distinctive reputation for high quality. The purchasing public is likely to attribute to Plaintiffs or the other MLB Entities, Defendants' use of MLB Trademarks as a source of origin, authorization

61

and/or sponsorship for the products Defendants sell and further, purchase Defendants' products in the erroneous belief that Defendants are associated with, sponsored by or affiliated with Plaintiffs or the other MLB Entities, when Defendants are not.

166. Plaintiffs have not authorized or licensed the use of MLB Trademarks to Defendants.

167. Defendants' unauthorized use of the MLB Trademarks in their production, marketing, sale and distribution of counterfeit products are diluting the distinctive quality of MLB Trademarks and the goodwill associated with them in violation of Section 43(a) of the Lanham Act, 15 U.S.C § 1125(c).

168. Such conduct has injured Plaintiffs and each of the other MLB Entities and said injury will continue unless the Court enjoins Defendants from committing further wrongful acts.

169. Upon information and belief, Defendants intentionally and willfully utilized MLB Trademarks and traded on Plaintiffs' reputation and goodwill.

170. Plaintiffs have no adequate remedy at law and are suffering irreparable harm and damage as a result of the aforesaid acts of Defendants in an amount thus far not determined.

171. Upon information and belief, Defendants have obtained gains, profits and advantages as a result of their wrongful acts in an amount thus far not determined.

**FIFTH CAUSE OF ACTION**
**INJURY TO BUSINESS REPUTATION AND DILUTION**
**NEW YORK GENERAL BUSINESS LAW § 360-l**

172. Plaintiffs repeat and reallege the allegations of the previous paragraphs as though fully set forth herein.

173. Plaintiffs, on behalf of the general public, as well as for themselves, seek recovery from Defendants for violation of New York General Business Law § 360-l, et seq.

174. By virtue of Defendants' unauthorized use of MLB Trademarks, such use trading on the goodwill associated with Plaintiffs or the other MLB Entities, Defendants have misled and will continue to mislead the public into assuming a connection between Plaintiffs or the other MLB Entities and Defendants' products.

175. By falsely suggesting a connection with or sponsorship by Plaintiffs or the other MLB Entities, Defendants are likely to cause public confusion constituting unfair competition within the meaning of New York General Business Law § 360-l.

176. If such action on the part of Defendants continue, Plaintiffs and the other MLB Entities will suffer irreparable harm of a continuing nature for which there is no adequate remedy at law.

177. Plaintiffs have no adequate remedy at law and are suffering irreparable harm and damage as a result of the aforesaid acts of Defendants in an amount thus far not determined.

178. Upon information and belief, Defendants have obtained gains, profits and advantages as a result of their wrongful acts in an amount thus far not determined.

**SIXTH CAUSE OF ACTION**
**TRADEMARK INFRINGEMENT UNDER NEW YORK LAW**
**NEW YORK GENERAL BUSINESS LAW § 360-k**

179. Plaintiffs repeat and reallege the allegations of the previous paragraphs as though fully set forth herein.

180. Defendants use the MLB Trademarks in connection with Defendants' manufacturing, sale, distribution and advertising of their counterfeit and infringing goods.

181. Defendants have used the MLB Trademarks without Plaintiffs' consent or authorization. Defendants' use, including the manufacturing, sale, and distribution of infringing products, is likely to cause confusion and mistake in the minds of the public, leading the public to

believe that Defendants' products emanate or originate from Plaintiffs or the other MLB Entities, or that Plaintiffs have approved, sponsored or otherwise associated themselves with Defendants, all of which is untrue.

182.    Defendants' activities as aforesaid create the false and misleading impression that Defendants are sanctioned, assigned or authorized by Plaintiffs to use the MLB Trademarks to manufacture, advertise, distribute, appraise, offer for sale or sell counterfeit products bearing the MLB Trademarks when Defendants are not so authorized.

183.    Defendants engage in the aforementioned activity with the intent to confuse and deceive consumers into believing that Defendants and the goods they sell are in some way sponsored by, affiliated or associated with Plaintiffs or the other MLB Entities when the Defendants are not.

184.    Defendants' acts as described above constitute trademark infringement under New York state law.

185.    Plaintiffs have no adequate remedy at law and are suffering irreparable harm and damage as a result of the aforesaid acts of Defendants in an amount thus far not determined.

186.    Upon information and belief, Defendants have obtained gains, profits and advantages as a result of their wrongful acts in an amount thus far not determined.

**SEVENTH CAUSE OF ACTION**
**COMMON LAW TRADEMARK INFRINGEMENT**

187.    Plaintiffs repeat and reallege the allegations of the previous paragraphs as though fully set forth herein.

188.    Defendants' acts previously alleged herein constitute common law trademark infringement.

189. Plaintiffs are without adequate remedy at law, as Defendants' acts have caused Plaintiffs irreparable harm to their business reputation, goodwill and stature in the business community.

190. Plaintiffs are informed and believe and thereon allege that Defendants committed the above alleged acts oppressively, fraudulently, maliciously and in conscious disregard of Plaintiffs' rights, and Plaintiffs are therefore entitled to exemplary and punitive damages pursuant to the common law of the State of New York in an amount sufficient to punish, deter and make an example of Defendants.

191. The manufacturing, distribution, and sale of the unauthorized and infringing products by Defendants is without any permission, license or other authorization from Plaintiffs or the other MLB Entities. The aforesaid unauthorized products are being distributed and sold in interstate commerce.

192. Plaintiffs have no adequate remedy at law and are suffering irreparable harm and damage as a result of the aforesaid acts of Defendants in an amount thus far not determined.

193. Upon information and belief, Defendants have obtained gains, profits and advantages as a result of their wrongful acts in an amount thus far not determined.

**EIGHTH CAUSE OF ACTION**
**MISAPPROPRIATION AND UNFAIR COMPETITION**
**UNDER NEW YORK COMMON LAW**

194. Plaintiffs repeat and reallege the allegations of the previous paragraphs as though fully set forth herein.

195. Defendants' aforesaid acts constitute misappropriation and infringement of Plaintiffs' property rights, goodwill and reputation and unfair competition under the common law of the State of New York.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

I.       That permanent injunctions be issued enjoining and restraining Defendants and their officers, agents, servants, employees and attorneys and all those in active concert or participation with them, from:

A.       Using any reproduction, counterfeit, copy or colorable imitation of the MLB Trademarks to identify any goods or the rendering of any services not authorized by Plaintiffs;

B.       Engaging in any course of conduct likely to cause confusion, deception or mistake, or to injure Plaintiffs' business reputation or dilute the distinctive quality of Plaintiffs' names and the MLB Trademarks;

C.       Using a false description or representation including words or other symbols tending to falsely describe or represent Defendants' unauthorized goods as being those of Plaintiffs or the other MLB Entities or sponsored by or associated with Plaintiffs or the other MLB Entities and from offering such goods into commerce;

D.       Further infringing the MLB Trademarks by manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, displaying or otherwise disposing of any products not authorized by Plaintiffs bearing any simulation, reproduction, counterfeit, copy or colorable imitation of the MLB Trademarks;

E.       Using any simulation, reproduction, counterfeit, copy or colorable imitation of the MLB Trademarks in connection with the rental, promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any

66

unauthorized products in such fashion as to relate or connect, or tend to relate or connect, such products in any way to Plaintiff, or to any goods sold, manufactured, sponsored or approved by, or connected with Plaintiffs or the other MLB Entities;

F.    Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any products manufactured, distributed, sold or rented by Defendants are in any manner associated or connected with Plaintiffs or the other MLB Entities, or is sold, manufactured, licensed, sponsored, approved or authorized by Plaintiffs;

G.    Constituting an infringement of any of the MLB Trademarks or of Plaintiffs' rights in, or to use or to exploit, said MLB Trademarks, or constituting any dilution of Plaintiffs' name, reputation or goodwill;

H.    Secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting or displaying of all unauthorized products which infringe the MLB Trademarks;

I.    Selling, offering for sale, or advertising any merchandise bearing the MLB Trademarks on the Internet or in e-commerce, including but not limited to all forms of social media; and

J.    Effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (A) through (I).

67

II.        Directing that Defendants deliver up for destruction to Plaintiffs all unauthorized products and advertisements in their possession or under their control bearing any of the MLB Trademarks or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, and all plates, molds, matrices and other means of production of same pursuant to 15 U.S.C. § 1118.

III.       Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any products manufactured, sold or otherwise circulated or promoted by Defendants are authorized by Plaintiffs or related in any way to Plaintiffs' products.

IV.       Directing Defendants to supply Plaintiffs with the name and address of each person or entity from whom or from which they has purchased any item bearing the MLB Trademarks.

V.        Directing Defendants, within thirty (30) days after the service of judgment upon it, with notice of entry thereof, to file with the Court, and serve upon Plaintiffs, a written report under oath setting forth in detail the manner in which Defendants have complied with paragraphs I through IV above.

VI.       Awarding to Plaintiffs the Defendants' profits from their unlawful acts herein alleged as Defendants' total sales of merchandise bearing any one or more of the MLB Trademarks, less any elements of cost or deductions proved by Defendants and allowed by law.

VII.      Awarding to Plaintiffs the damages from Defendants' unlawful acts herein alleged.

VIII.     Pursuant to 15 U.S.C. § 1117(a), directing Defendants to pay Plaintiffs all of the profits assessed pursuant to paragraph VI, *supra*, together with three times the amount of damages assessed pursuant to paragraph VII, *supra*, with prejudgment interest on the foregoing sums.

IX.       In the event that the Court determines that Defendants intentionally used a mark knowing that such mark was a counterfeit mark, directing Defendants to pay Plaintiffs:

68

A.    Pursuant to 15 U.S.C. § 1117(a) and (b) all of the profits assessed pursuant to paragraph VI, *supra*; plus;

B.    Pursuant to 15 U.S.C. § 1117(a) and (b) three times the profits assessed pursuant to paragraph VI, *supra*, or three times the damages assessed pursuant to paragraph VII, *supra*, whichever is greater; and

C.    Prejudgment interest on the foregoing sums at an annual interest rate established under 26 U.S.C. § 6621(a)(2) commencing as of the date of the service of the Amended Complaint herein.

X.    Ordering that Plaintiffs recover the costs of this action together with reasonable attorneys' and investigators' fees and prejudgment interest in accordance with 15 U.S.C. § 1117.

XI.    Directing that this Court retain jurisdiction of this action for the purpose of enabling Plaintiffs to apply to the Court at any time for such further orders and interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement or compliance therewith and for the punishment of any violations thereof.

XII.    Awarding to Plaintiffs such other and further relief as the Court may deem just and proper, together with the costs and disbursements which Plaintiffs have incurred in connection with this action.

Dated: October 24, 2025
      New York, New York

                             Respectfully submitted,

                             BAKER & HOSTETLER LLP

                             By: */s/ Robertson D. Beckerlegge*
                             Heather J. McDonald
                             Robertson D. Beckerlegge
                             Megan A. Corrigan
                             45 Rockefeller Plaza
                             14th Floor
                             New York, NY 10111
                             Tel: (212) 589-4200
                             Fax: (212) 589-4201

                             *Attorneys for Plaintiffs MLB Advanced Media, L.P. and Major League Baseball Properties, Inc.*